# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KEITH J. WILLIAMS, | : | |
| Petitioner, | : | Case No. 3:08cv00294 |
| vs. | : | District Judge Thomas M. Rose |
| | | Magistrate Judge Sharon L. Ovington |
| OHIO ADULT PAROLE AUTHORITY, | : | |
| | : | |
| Respondent. | | |
| | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Ten years ago, in October 2000, Petitioner Keith J. Williams was convicted of murder in the State of Michigan. He is consequently an inmate at the Oaks Correctional Facility in Manistee, Michigan serving a twenty-five to fifty-year sentence.

Williams is concerned that on or very near the date of his future release from state custody in Michigan, he will be detained on an unconstitutionally invalid parole holder/warrant issued by Respondent Ohio Adult Parole Authority. (Doc. #6 at 259). He therefore brings the instant case (pro se) seeking a writ of habeas corpus under 28 U.S.C. §2254 accomplishing three things: "(1) ... quashing the Ohio Adult Parole Authority's

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Parole Warrant(s); (2) discharg[ing] the Ohio Adult Parole Authority from future custody pursuant to such warrant(s); (3) [requiring] Petitioner's final release from the custody of the Ohio Adult Parole Authority." (Doc. #5 at 47).[2]

The case is before the Court on Williams' Petition for Writ of Habeas Corpus and Brief in Support (Doc. #5), Respondent's Answer/Return of Writ (Doc. #4), Williams' Response (Doc. #6), Williams' Citation of Supplemental Authorities Memorandum [sic] (Doc. #7), Williams' Motion for Summary Judgment (Doc. #10), and the record as a whole.

## II. Background

### A. Conviction, Sentence, Parole, and Parole Violations

Williams has a history of criminal activity in Ohio. In 1985 he pled no contest to a charge of aggravated burglary in the Montgomery County, Ohio Court of Common Pleas. He was convicted and sentenced to a term of incarceration lasting five to twenty-five years. (Doc. #4 at 126-27). Respondent states that Williams did not file a direct appeal of his conviction. (Doc. #4 at 89).

Four years later, in November 1989, Respondent paroled Williams to a halfway house in Dayton, Ohio. (Doc. #4 at 128). His parole was to continue for not less than one year before he became eligible for final release. *Id.* Williams' eligibility hinged on whether he had "maintained satisfactory conduct and adjustment." *Id.* He was further notified, "Your

---

[2] Citations to specific pages in documents of record refer to the page numbers assigned by the Court's case management electronic case filing system.

parole may be extended or revoked if you fail to comply with these requirements." *Id*.

Williams did not refrain from misconduct. Respondent's records indicate he was convicted of aggravated assault, and a resulting parole violation. (Doc. #4 at 255). He was sentenced to an additional one and one-half years of incarceration, to be served concurrently with his original sentence. Consequently, he was re-incarcerated in July 1990 (Doc. #4 at 255).

Two years and several months passed. Williams was then paroled, in November 1992, to a halfway house in Dayton, Ohio. His term of parole (like his previous term) was to last a minimum of one year. (Doc. #4 at 129). Williams' eligibility for final release again hinged on whether he had "maintained satisfactory conduct and adjustment." *Id.* And he was again notified, "Your parole may be extended or revoked if you fail to comply with these requirements." *Id*.

Williams initially struggled a bit to life in the halfway house. *See* Doc. #4 at 254. Yet he "conformed with and abided by all the conditions of supervision as well as the ... Halfway House conditions." (Doc. #4 at 254). He also "did secure gainful employment." *Id*. He successfully completed the halfway-house program and was released from the halfway house in early 1993. *Id*. He went to live with his grandmother in Dayton, although he remained on parole under Respondent's supervision. *Id*.

In April 1993 Respondent provided Williams with a travel permit so he could live with his mother in Detroit, Michigan. He went to Michigan but soon violated the conditions of his Ohio parole by absconding from Michigan (and from Respondent's control) in

3

November 1993.

Williams resurfaced on Respondent's radar on January 22, 1994, when Respondent learned that he had been arrested in Jefferson Township, Ohio. (Doc. #4 at 254). Respondent's "case review summary," dated February 16, 2004, states that Williams was in the Montgomery County Jail with "Local Charges: Fel[onious] Assault & Resisting Arrest." (Doc. #4 at 243). These criminal charges arose from his girlfriend's report to police that he had physically assaulted her in a vicious manner. *Id.*

A note on Respondent's case review summary states: "Hung Jury." (Doc. #4 at 243). In a Petition Williams filed in state court, he characterized this as a mistrial, explaining:

> [O]n 4-15-94, following a mistrial the Montgomery County Court released Petitioner from the $5,000.00 cash bond and ordered his bond be reduced to an O.R. (Own Recognizance) bond, but that he shall be remanded to the [Respondent] A.P.A. for disposition of their case.

(Doc. #4 at 132). The remand enabled Respondent to determine whether Williams had violated the condition of his parole. In July 1994 Respondent found Williams guilty of all charged parole violations and consequently revoked his parole. (Doc. #4 at 217-18). Respondent continued Williams' potential eligibility for future parole to July 1995. (Doc. #4 at 217-30). At that point Williams was again serving time on his original five to twenty-five year sentence imposed in 1985 due to his aggravated-burglary conviction. (Doc. #4 at 126).

On April 17, 1998, Williams was released on parole for the third time. He returned to a halfway house in Dayton, Ohio. (Doc. #4 at 210-13, 235, 324). He was placed on a one-

year minimum term of parole. *Id*. at 235. After one month, Williams had completed the "Fresh Start Program" and was approved to live at a specific address in Cleveland, Ohio. He eventually moved to Cleveland were he obtained employment.

"However, on 04-23-99, [Williams] reported to the APA Office for the last time. On 06-11-99, [he] was declared a Violator-At-Large...." (Doc. #4 at 235, 246-49). There is little, if any, doubt that one reason Williams failed to report to the Adult Ohio Parole Authority was his indictment seven weeks earlier on a charge of felonious assault in the Cuyahoga County, Ohio Court of Common Pleas. (Doc. #4 at 236). Later, in October 1999, Williams was also indicted on a charge of escape in Cuyahoga County, Ohio. *Id.*

According to Williams, he was arrested in Memphis, Tennessee on October 12, 1999 "for a parole warrant issued by the [Ohio] APA and a felony warrant issued by the State of Michigan; neither warrant was served on [him]..., nor was [he] apprised of the charges. On January 15, 2000, [he] was extradicted from Memphis, Tennessee to the State of Michigan, to face the felony warrant charges." (Doc. #4 at 324).

Williams acknowledges, "On October 25, 2000, [he] was convicted of second-degree murder in the State of Michigan, and sentenced to 42-85 years in prison, and thereafter incarcerated within the Michigan Department of Corrections." (Doc. #4 at 332). Over the following five or more years, Williams challenged his conviction and sentence in the Michigan Court of Appeals and the Michigan Supreme Court.

Respondent explains, and its records bear out, that on October 31, 2001, it issued a parole holder/warrant to all parole officers and detention institutions for Williams' detention.

5

(Doc. #4 at 231). Respondent sent the parole warrant to the Baraga Maximum Correctional Institution in Baraga, Michigan, where Williams was serving time on his second-degree murder conviction. *Id*. The warrant also states, in part, "reliable information has reached the [Respondent] Adult Parole Authority that such offender has violated the conditions of such [parole] release...." *Id*. As with all his prior parole revocations in Ohio, this parole-revocation warrant, once effected, would require Williams to continue serving in Ohio the remaining years of his 1985 sentence for aggravated burglary. *See id*.

Williams continued to serve his sentence in Michigan doubtlessly anticipating the final resolution of direct state appeal in the Michigan courts. In August 2005 the Michigan Court of Appeals affirmed Williams murder conviction but remanded for re-sentencing.[3] On remand, the court imposed a sentence lasting twenty-six to fifty years. (Doc. #4 at 333). A State of Michigan Department of Corrections' document notes that Williams' date of parole eligibility is January 1, 2028. (Doc. #4 at 295).

### B. The Next Parole Warrant and Williams' Claims

The focal point of Williams' claims in the instant case concerns the next parole

---

[3] In its decision the Michigan Court of Appeals' decision briefly describes Williams' crime:

"The evidence in this case indicated that the victim's family took defendant in and provided him with a place to live, as an act of charity. When the victim told defendant that he had to move out, defendant left the room, obtained a rifle, and shot the victim once. Defendant ignored the pleas of his brother to refrain from committing this murder, and he apparently shot the victim in front of the victim's family members.... Defendant denied responsibility for his actions, stating that he shot the victim because the victim had 'jumped' defendant while he was asleep."

*People of State of Michigan v. Keith J. Williams*, unpublished opinion, 2004 WL 177436 at *1 (Mich. App., Jan. 29, 2004).

detainer/arrest warrant Respondent issued.  Williams explains: "on August 16, 2005, the [Respondent ] issued a new parole warrant for [his] arrest and detainment."  (Doc. #4 at 259, 360).  A copy of this parole warrant notes that Williams was convicted of aggravated burglary in Ohio, had been released on parole, yet remained within the custody of the Ohio Department of Rehabilitation and Corrections under Respondent's supervision.  (Doc. #5 at 84).  The warrant continues, "AND WHEREAS, reliable information has reached the [Ohio] Adult Parole Authority that such offender has violated the conditions of such release or is about to lapse into criminal ways or company, and hereby declared to be a parole violator..." *Id*.

    Williams's Petition for Writ of Habeas Corpus poses two main issues:

I.    WAS PETITIONER'S DUE PROCESS REQUIREMENTS VIOLATED WHEN THE OHIO ADULT PAROLE AUTHORITY ISSUED A PAROLE WARRANT SIX YEARS AFTER DECLARING PETITIONER A PAROLE VIOLATOR, AND WITHOUT INCLUDING NOTICE OF THE VIOLATION CHARGES WITH THE ISSUANCE OF THE PAROLE WARRANT?

II.    DID THE OHIO ADULT PAROLE AUTHORITY DENY PETITIONER DUE PROCESS ... BY NOT USING THEIR POWERS TO HOLD AN IMMEDIATE PRESERVATION HEARING?

(Doc. #5 at 54).

    Williams describes his claims as follows:

> "In short, [he] does not want to, nor does he have to attack any previous convictions as a condition to suing the writ of habeas corpus to attack the [Respondent] APA. [His] grievance is not that he was unlawfully convicted , but rather that he is being subjected to physical and future restraints via the APA's [Respondent's] parole warrant/detainer."

7

(Doc. #6 at 481). Williams maintains that Respondent failed to inform him about what parole violation he had committed, thus preventing him from having an opportunity to present a defense, or mitigating evidence[,] which would have supported a[n] argument that [his] parole should not be revoked." (Doc. #5 at 8). Williams continues:

> "More to the point, for approximately six years, the APA failed to serve their Parole Warrant upon Petitioner; inform Petitioner of what they were charging him with, his rights; or any possible action [Respondent] APA could take against [him], and this is true, despite the fact [he] and MDOC periodically notified the [Respondent] APA of Petitioner's whereabouts and sought status of said Parole Warrants."

(Doc. #5 at 62).

### III. Summary Judgment Standards

Williams argues that he is entitled to summary judgment under Fed. R. Civ. P. 56 because Respondent's arguments against his habeas petition are misleading and a misrepresentation of the facts and because Respondent cannot show that it did not violate his state and federal right to due process "by failing and refusing to notify [him] of any charges so that he may have an opportunity to prepare a defense." (Doc. #10 at 592).

Williams is not entitled to summary judgment in his favor for the reasons explained next.

### IV. Discussion

Respondent contends that Williams' Petition fails for many reasons: (1) he cannot establish that he is in Respondent's "custody" as required by 28 U.S.C. §2254(a); (2) he has

not exhausted his due process claims against the parole arrest/detainer warrant because *Oliverio v. Storey*, 746 F.2d 1478 (6th Cir. 1984) requires him to exhaust his state remedies concerning his underlying 1985 conviction for aggravated burglary, which he has failed to do; (3) his claims concerning the parole warrant/detainer and his claims concerning his underlying conviction are barred by the one-year statute applicable under 28 U.S.C. § 2244(d); (4) his claims are procedurally defaulted; and (5) his claims clearly lack merit.  The best of these arguments is that Williams' claims are meritless.

"[T]he conditional freedom of a parolee generated by statute is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment which may not be terminated absent appropriate due process safeguards.  The revocation mandated by *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)] is bottomed on the parallel interests of society and the parolee in establishing whether a parole violation has occurred and, if so, under all the circumstances the quality of that violation calls for parole revocation."  *Moody v. Daggett*, 429 U.S. 78, 85-86, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

The State of Ohio therefore must provide Williams with appropriate due process safeguards before revoking his parole that grew out of his 1985 aggravated burglary conviction.  *See id*.  This, however, does not help Williams show he is presently entitled to writ of habeas corpus quashing Ohio's parole detainer/arrest warrant.  Williams' due process rights do not include the right to an immediate hearing to resolve whether Ohio's parole detainer/arrest warrant is constitutionally valid.  *See Moody*, 429 U.S at 86.  Williams' present circumstances closely resemble the petitioner's in *Moody*.

The petitioner in *Moody*, a federal parolee, shot and killed two people while he was on parole. He was convicted of manslaughter and murder, and he began serving two concurrent ten-year sentences. While serving these sentences, he was served with a parole detainer. But, knowing his manslaughter and murder convictions constituted a violation of his earlier parole, the petitioner in *Moody* wanted officials to immediately issue a parole violator warrant, so he could serve any time imposed for his parole violation while concurrently with his sentence for murder. 429 U.S. at 80-81. Parole officials denied his request. They informed him that they intended not to execute the parole violator warrant until his release from his homicide sentences. *Id*. The petitioner sought the dismissal of the parole violator warrant, arguing that "he had been denied a prompt hearing at which the pending parole revocation issues could be aired." *Id*. at 80. Rejecting his contention, the Supreme Court reasoned:

> "Petitioner's present confinement and consequent liberty loss derive not in any sense from the outstanding parole violator warrant, but from his two 1971 homicide convictions. Issuance of the warrant and notice of that fact to the institution of confinement did no more than express the [Parole] Board's intent to defer consideration of parole revocation to a later time. Though the gravity of petitioner's subsequent crimes places him under a cloud, issuance of the warrant was not a determination that petitioner's parole under his 1962 ... conviction will be revoked; the time at which the Commission must make that decision has not yet arrived."

*Moody*, 429 U.S. at 86-87. So it is for Williams. While he was on parole in 1999 from his original 1985 conviction and sentence, he left Ohio without Respondent's approval or knowledge. This alone could have been a parole violation as indicated by the violator at large notice Respondent issued in June 1999. (Doc. #4 at 246). Even if it was not a parole

10

violation, his later conviction for second-degree murder landed him in Michigan prison, where he is now. As in *Moody*, his present loss of liberty derives from his crime in Michigan, not from a violation of his Ohio parole conditions. *Moody*, 429 U.S. at 86-87. Also like in *Moody*, Respondent's issuance of a parole warrant merely informed Michigan officials that Respondent did not intend to determine whether Williams had violated his Ohio parole conditions until his future release from prison in Michigan. *Id*. Thus, as in *Moody*, Williams' time for adjudicating the constitutional validity of the parole detainer/arrest warrant and any later determination of whether his parole should be revoked has not yet arrived. *Id*. Williams therefore has no constitutional entitlement to an immediate parole hearing, and Respondent's decision to wait until he is released from his sentence in Michigan does not constituted a violation of his Fourteenth Amendment right to due process. *Id*.

      Williams argues that he was constitutionally entitled to a hearing to preserve evidence – a preservation hearing – concerning the reason why he left Ohio without Respondent's prior authorization. He reasons that Respondent's delay in providing, or failure to provide, him with a preservation hearing causes actual prejudice to his ability to present a defense or any mitigating factors to Respondent, thereby violating his due process right to a fair adversarial hearing. Williams' desire for a preservation hearing becomes clearer through information in an Exhibit, a letter, he has attached to his Petition. He explained in the letter:

> The mitigating evidence that I would like to present for the parole record, surrounds being sexually abused by my Ohio Adult Parole Officer, and I have approximately four witnesses to said sexual abuse, therefore, before

>said witnesses and other evidence are lost, I would like to make a record of said witnesses['] testimony, and any other evidence.

(Doc. #5 at 80).

Williams' contentions regarding Respondent's inaction and failure to provide a hearing to preserve evidence do not support the issuance of a writ of habeas corpus. This is so because if this Court fully credits as true his assertion that his Ohio Parole Officer sexually abused him, none of the related evidence could vitiate or diminish the seriousness of what has since become his central parole violation: his second-degree murder conviction in Michigan. As in *Moody*, this crime constituted an "obvious violation," 429 U.S. at 80, of the conditions of his parole – which, of course, required Williams to "Obey all federal state and local laws an ordinances...." (Doc. #4 at 210). Consequently, assuming in Williams' favor that he left Ohio for an excusable reason, his subsequent act of second-degree murder in Michigan renders his excuse for leaving Ohio a nullity.

Williams also argues that Respondent violated his due process rights by delaying for six years the issuance of the parole warrant he received in April 1996. This contention lacks merit, again because any prejudice caused to Williams is negated by his intervening Michigan murder conviction while under the conditions of his Ohio parole. Similarly, Williams' argument that the parole warrant is constitutionally flawed by a lack of specificity overlooks or ignores the obvious parole violation he committed by murdering a man in Michigan.

Accordingly, Williams' Petition for Writ of Habeas Corpus lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. Williams' Petition for Writ of Habeas Corpus (Doc. #5) be DENIED and DISMISSED as meritless;

2. Williams' Motion for Summary Judgment (Doc. #10) be DENIED; and

3. The case be terminated on the docket of this Court.


August 10, 2010

                                                  s/Sharon L. Ovington
                                                   Sharon L. Ovington
                                          United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).